1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE F. BICKOFF,<br><br>                                    Plaintiff,<br><br>         vs.<br><br>WELLS FARGO, N.A., and DOES 1 through 20, Inclusive,<br><br>                                    Defendants. | CASE NO. 11-CV-2452 BEN (WVG)<br><br>**ORDER:**<br><br>**(1) GRANTING TEMPORARY RESTRAINING ORDER**<br><br>**(2) SETTING HEARING AND BRIEFING SCHEDULE FOR PRELIMINARY INJUNCTION**<br><br>[Docket No. 3] |

        Presently before the Court is Plaintiff's Application for a Temporary Restraining Order that temporarily restrains Defendant from proceeding with the trustee's sale of Plaintiff's real property scheduled for November 3, 2011.  For the reasons set forth below, the Application for Temporary Restraining Order is **GRANTED**.

## BACKGROUND

        On October 26, 2007, Defendant Wells Fargo Bank made a construction loan to Plaintiff Bruce Bickoff in the amount of $3,000,000.  (Kapaun Decl., Exh. A [Promissory Note].)  The loan is secured by a Deed of Trust on real property located at 18011 Avenida Alondra, Rancho Santa Fe, California.  (*Id.*, Exh. B [Deed of Trust].)  According to the terms of the loan, the loan was due and payable in full on February 28, 2010, and Plaintiff was required to pay the property taxes and maintain insurance on the real property.  (*Id.* ¶ 7, Exh. B.)  Wells Fargo advanced $2,991,153.79 to Bickoff for construction

1  of a home on the property.  (*Id.*, Exh. C [Loan History].)

2        On May 25, 2007, Wells Fargo issued a Conventional Commitment Letter, which contained

3  the terms and conditions under which Wells Fargo was obligated to provide permanent financing to

4  Bickoff.  (*Id.*, Exh. E [Commitment Letter].)  The Commitment Letter stated:

5

6  > Your loan application has been approved subject to the terms and conditions included
   > in this commitment letter.  You may be required to provide documentation that is
   > acceptable to the Lender.  If the documentation you provide does not satisfy the terms

7  > and conditions, your final approval is not guaranteed and the Lender may require
   > additional information and review.  This commitment is also subject to reconsideration

8  > if there is any material change in your financial status, in the information proved in
   > your application or on the condition of the property.

9

10  (*Id.*)  The Commitment Letter also required that (1) Plaintiff have at least $2,232,448 in liquid funds

11  and (2) there be no material adverse changes in Plaintiff's income, assets, or credit, prior to the

12  issuance of closing documents.  (*Id.*)

13        Plaintiff failed to repay the loan by the maturity date of February 28, 2010, resulting in default.

14  (*Id.*, Exh. C.)  No payments have been made on the loan since March 2010, and there is currently a

15  past due and unpaid balance of $3,317,908.32 on the loan.  (*Id.*, Exhs. C, D [Pay-Off Statement].)

16  Plaintiff has also failed to pay property taxes and maintain insurance on the property.  (*Id.*, Exh. C.)

17        On June 29, 2010, Defendant advised Plaintiff that in order to resolve his default, he may (1)

18  obtain finance elsewhere and repay the loan, (2) apply for a new loan with Wells Fargo, provided that

19  Plaintiff provide the required documents to determine his eligibility for a new loan, or (3) apply for

20  a deed in lieu or short sale.  (*Id.*, Exh. F.)  Plaintiff, however, did not submit any of the documents

21  necessary to qualify for permanent financing.  (*Id.* ¶ 16; Bruce Bickoff Decl. ¶ 31.)

22        On September 22, 2010, a Notice of Default was recorded. (Def. RJN, Exh. 1.)[1] On December

23

24       [1] In support of its Opposition, Defendant requests that the Court take judicial notice of: (1) the
   Notice of Default and Election to Sell Under Deed of Trust dated March 31, 2011, recorded in the

25  official records of the San Diego County Recorder's Office on April 1, 2011 as Document No. 2011-
   0168374; and (2) the Complaint filed on December 27, 2010, in Case No. 37-2010-00063391-CU-

26  MC-NC (San Diego County Superior Court).  As for the Notice of Default, the request is **GRANTED**.
   *See* FED. R. EVID. 201(b).  As for the Complaint, the request is **GRANTED**, but only for purposes of

27  noticing the existence of the action and the claims made therein. *See In re Bare Escentuals, Inc. Sec.
   Litig.*, 745 F. Supp. 2d 1052, 1067 (N.D. Cal. 2010) ("[T]he court may take judicial notice of the

28  existence of unrelated court documents, although it will not take judicial notice of such documents for
   the truth of the matter asserted therein.").

27, 2010, Plaintiff filed a lawsuit to prevent the foreclosure in San Diego County Superior Court, alleging violation of California Civil Code Section 2923.5. (*Id.*, Exh. 2.)

Plaintiff filed the present action on October 20, 2011, in San Diego County Superior Court. The Complaint asserts seventeen causes of action: (1) breach of written contract; (2) breach of oral contract; (3) breach of implied covenant of good faith and fair dealing; (4) breach of loan commitment; (5) deceit; (6) fraud under California Civil Code Section 1710; (7) constructive fraud; (8) fraud in the inducement; (9) promissory fraud; (10) negligent misrepresentation; (11) concealment; (12) conversion; (13) unjust enrichment; (14) intentional infliction of emotional distress; (15) negligent infliction of emotional distress; (16) violation of California Business and Professions Code Section 17200; and (17) violation of Consumer Legal Remedies Act, Civil Code Section 1750. Defendant removed the action on October 21, 2011. Presently before the Court is Plaintiff's Application for Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction.

## DISCUSSION

Federal Rule of Civil Procedure 65 outlines the procedure the Court must follow in deciding whether to grant a temporary restraining order ("TRO"). *See* Fed. R. Civ. P. 65(b). Ordinarily before issuing a TRO, the Court must hold a hearing or otherwise provide the opposing party with an opportunity to respond. In this case, the Court gave Defendant time to file an opposition, which it did. (Docket Nos. 4, 5.) Therefore, the notice requirement is satisfied.

A TRO is a form of preliminary injunctive relief limited to "preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing." *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 439 (1974). To obtain a TRO, similar to a preliminary injunction, Plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) a risk of irreparable harm absent injunctive relief; (3) the balance of equities tip in favor of injunctive relief; and (4) injunctive relief is in the public interest. *Winter v. Natural Res. Def. Counsel*, 555 U.S. 7, 20 (2008). In addition, an injunction may be issued "where the likelihood of success is such that serious questions going to the merits [are] raised and the balance of hardships tips sharply in plaintiff's favor," assuming the other two elements of the *Winter* test are also met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011) (internal quotation marks omitted).

As for the likelihood of success on the merits, Plaintiff alleges that he was "guaranteed permanent financing, was assured [that he would receive permanent financing] throughout the entire construction of the home, and only upon expiration of the construction contract did Wells Fargo refuse to honor its commitment." (TRO Appl. at 5.)  Defendant's obligation to provide permanent financing was governed by the Commitment Letter.  As explained above, the Commitment Letter details the conditions Plaintiff was required to satisfy in order to obtain final approval for permanent financing. The Commitment Letter requires that (1) Plaintiff have at least $2,232,448 in liquid funds and (2) there be no material adverse changes in Plaintiff's income, assets, or credit. (Kapaun Decl., Exh. E.)  There is evidence that Plaintiff did not meet these conditions.  (Bruce Bickoff Decl. ¶ 19.)

There is evidence, however, that indicates that Defendant verbally represented to Plaintiff that he would automatically qualify for permanent financing.  Plaintiff submits three email exchanges between Plaintiff and representatives of Wells Fargo that purportedly establish that Defendant promised to provide Plaintiff with permanent financing.  In the first exchange, dated May 2007, Mr. Ostrom stated that he would meet with Plaintiff in order to discuss two required sets of disclosures—one for a construction loan and one for a permanent loan.  (TRO Appl., Exh. 2.)  In the second exchange, dated June 2008, Plaintiff wrote that Mr. Ostrom had clarified the draw process for him and told him that he was approved for permanent financing.  (*Id.*, Exh. 3.)  Ms. Otten replied, "Wonderful!" (*Id.*)  In the third exchange, dated April 2010, Plaintiff requested documentation for the permanent loan, and Mr. Anthony Gangelhoff from Wells Fargo referred him to the Commitment Letter.  (*Id.*, Exh. 4.)  In the same exchange, Plaintiff stated that Defendant had promised him permanent financing, and asked several additional questions in regards to permanent financing.  (*Id.*) Mr. Gangelhoff, however, refused to answer his questions.  (*Id.*)  These email exchanges raise serious questions going to the merits of the action.

As for the risk of irreparable harm absent injunctive relief, Plaintiff's loss of his real property through foreclosure constitutes a threat of irreparable injury. *Sundance Land Corp. v. Cmty. First Fed. Savings & Loan Ass'n*, 840 F.2d 653, 661 (9th Cir. 1988).  The balance of equities also tips sharply in favor of granting injunctive relief.

11cv2452

**CONCLUSION**

In light of the above, the Court **GRANTS** Plaintiff's application for a temporary restraining order.[2]   **IT IS HEREBY ORDERED that Defendants and their agents are enjoined from proceeding with the trustee's sale of Plaintiff's property at 18011 Avenida Alondra, Rancho Santa Fe, California.**   This temporary restraining order may be dissolved by the Court sua sponte. In addition, this matter is set for a preliminary injunction hearing on <u>December 5, 2011, at 10:30 a.m.</u> Briefing shall comply with Civil Local Rule 7.1.

**IT IS SO ORDERED.**

**DATED:  November 2, 2011**

_____
**Hon. Roger T. Benitez**
**United States District Judge**

---

[2] Defendant argues that the Court should set bond at $629,000, which consists of "$300,000 for the more than $300,000 already delinquent on the Loan for unpaid interest and advances of taxes and insurance, $192,000 of payments that would be due and payable over the next 12 months if permanent financing were provided under the terms of the Commitment Letter, the approximate $50,000 in annual property taxes and $37,000 in insurance due during the next 12 months and the estimate of $50,000 in attorney's fees." (Opp. at 9.) This estimate seeks to compensate Defendant for the financial harm Defendant is likely to suffer if the trustee's sale is wrongfully enjoined for the entire course of the lawsuit. However, a bond need only be sufficient to cover the costs and damages likely to be incurred by Defendant between the date of the application and the hearing on the motion for preliminary injunction. As the Court has insufficient information to determine an appropriate amount for bond for this limited period, a bond will not be set at this time.