

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE F. BICKOFF,<br><br>                     Plaintiff,<br><br>vs.<br><br>WELLS FARGO BANK, N.A., and DOES 1 through 20, Inclusive,<br><br>                    Defendants. | CASE NO. 11-CV-2452 BEN (WVG)<br><br>**ORDER:**<br><br>**(1) DENYING PRELIMINARY INJUNCTION**<br><br>**(2) VACATING HEARING SET FOR DECEMBER 19, 2011**<br><br>[Docket No. 9] |

Presently before the Court is Plaintiff's Application for a Preliminary Injunction that restrains Defendant from proceeding with the trustee's sale of Plaintiff's real property. (Docket No. 9.) For the reasons set forth below, the Application for Preliminary Injunction is **DENIED**.

## BACKGROUND

On October 26, 2007, Defendant Wells Fargo Bank made a construction loan to Plaintiff Bruce Bickoff in the amount of $3,000,000. (Kapaun Decl. [Docket No. 6-3], Exh. A.) The loan is secured by a Deed of Trust on real property located at 18011 Avenida Alondra, Rancho Santa Fe, California. (*Id.*, Exh. B.) According to the terms of the loan, the loan was due and payable in full on February 28, 2010, and Plaintiff was required to pay the property taxes and maintain insurance on the real property. (*Id.* ¶ 7, Exh. B.) Wells Fargo advanced $2,991,153.79 to Bickoff for construction of a home on the property. (*Id.*, Exh. C.)

1   On May 25, 2007, Wells Fargo issued a Conventional Commitment Letter, which contained
2   the terms and conditions under which Wells Fargo was obligated to provide permanent financing to
3   Bickoff. (*Id.*, Exh. E.) The Commitment Letter stated:

> Your loan application has been approved subject to the terms and conditions included in this commitment letter. You may be required to provide documentation that is acceptable to the Lender. If the documentation you provide does not satisfy the terms and conditions, your final approval is not guaranteed and the Lender may require additional information and review. This commitment is also subject to reconsideration if there is any material change in your financial status, in the information provided in your application or on the condition of the property.

(*Id.* at 1.) The Commitment Letter also required that (1) Plaintiff have at least $2,232,448 in liquid funds; (2) there be no material adverse changes in Plaintiff's income, assets, or credit, prior to the issuance of closing documents; (3) an appraiser certify that the house was built according to approved plans and specifications, and that it was complete; (4) the property be free of any mechanic's liens and subject to a final inspection; and (5) Plaintiff have a certificate of occupancy. (*Id.* at 2-6.)

Plaintiff failed to repay the loan by the maturity date of February 28, 2010, resulting in default. (*Id.*, Exh. C.)[1] No payments have been made on the loan since March 2010, and there is currently a past due and unpaid balance of $3,317,908.32 on the loan. (*Id.*, Exhs. C, D.)

On June 29, 2010, Defendant advised Plaintiff that in order to resolve his default, he may (1) obtain finance elsewhere and repay the loan, (2) apply for a new loan with Wells Fargo, provided that Plaintiff provide the required documents to determine his eligibility for a new loan, or (3) apply for a deed in lieu or short sale. (*Id.*, Exh. F.) Plaintiff, however, did not submit any of the documents necessary to qualify for permanent financing. (*Id.* ¶ 16; Bickoff Decl. [Docket No. 3-3] ¶ 31.)

On September 22, 2010, a Notice of Default was recorded. (Def. RJN [Docket No. 6-4], Exh. 1.) On December 27, 2010, Plaintiff filed a lawsuit to prevent the foreclosure in San Diego County

---

[1] Plaintiff argues that he did not default because he failed to make interest payments, but because Wells Fargo refused to accept monthly interest payments from him. In support of this argument, he points to an email from Mr. Anthony Gangelhoff to Plaintiff, dated April 20, 2010. In this email, Mr. Gangelhoff informed Plaintiff that "the construction loan is in default," and "[a]t this time [Wells Fargo] will not accept any more monthly interest payments, since we have asked for the entire principal balance to be paid in full." (Bickoff Decl. [Docket No. 9-1], Exh. 5.) Mr. Gangelhoff makes clear that the reason why Wells Fargo would not accept monthly interest payments from Plaintiff was because Plaintiff was in default.

- 2 -

11cv2452

Superior Court, alleging violation of California Civil Code Section 2923.5. (*Id.*, Exh. 2.)

Plaintiff filed the present action on October 20, 2011, in San Diego County Superior Court. The Complaint asserts seventeen causes of action: (1) breach of written contract; (2) breach of oral contract; (3) breach of implied covenant of good faith and fair dealing; (4) breach of loan commitment; (5) deceit; (6) fraud under California Civil Code Section 1710; (7) constructive fraud; (8) fraud in the inducement; (9) promissory fraud; (10) negligent misrepresentation; (11) concealment; (12) conversion; (13) unjust enrichment; (14) intentional infliction of emotional distress; (15) negligent infliction of emotional distress; (16) violation of California Business and Professions Code Section 17200; and (17) violation of Consumer Legal Remedies Act, Civil Code Section 1750. Defendant removed the action on October 21, 2011.

On October 25, 2011, Plaintiff filed an Application for Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction. On November 2, 2011, the Court granted the Application for Temporary Restraining Order, and set a hearing and briefing schedule for an order to show cause why a preliminary injunction should not issue. Presently before the Court is Plaintiff's Supplemental Motion for Preliminary Injunction. Being fully briefed, the Court finds the Motion suitable for determination on the papers without oral argument, pursuant to Civil Local Rule 7.1.d.1. The hearing scheduled for December 19, 2011, at 10:30 a.m., is **VACATED**.

## DISCUSSION

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, *and* that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (emphasis added).

As for the likelihood of success on the merits, Plaintiff alleges that he was guaranteed permanent financing throughout the entire construction of the home, and only upon expiration of the construction contract did Wells Fargo refuse to provide Plaintiff with permanent financing. Defendant's obligation to provide permanent financing was governed by the Commitment Letter. As explained above, the Commitment Letter did not provide for automatic qualification for permanent financing, but rather detailed the conditions Plaintiff was required to satisfy in order to obtain final

approval for permanent financing. The Commitment Letter required that: (1) Plaintiff have at least $2,232,448 in liquid funds; (2) there be no material adverse changes in Plaintiff's income, assets, or credit; (3) an appraiser certify that the house was built according to approved plans and specifications, and that it was complete; (4) the property be free of any mechanic's liens and subject to a final inspection; and (5) Plaintiff have a certificate of occupancy. (Kapaun Decl. [Docket No. 6-3], Exh. E, at 2-6.) There is evidence that Plaintiff did not meet the first two conditions. (*See* Bickoff Decl. [Docket No. 3-3] ¶ 19.) Moreover, even assuming that Defendant had an implied obligation to consider Plaintiff for permanent financing, Plaintiff did not apply for permanent financing when Defendant requested that he do so. (*Id.* ¶ 31.)

First, Plaintiff argues that Defendant verbally represented[2] that Plaintiff would automatically qualify for permanent financing, both at the same time and after the Commitment Letter was approved. (*See id.* ¶¶ 9-10, 13-14.) This allegation, however, is contradicted by the statements of Plaintiff's own attorney. In a Letter from Attorney Jamie Bickoff to Ms. Jeanne Otten at Wells Fargo, dated June 26, 2008, Attorney Bickoff wrote, "Mr. Ostrom [at Wells Fargo] made it very clear to Mr. Bickoff that in order for Mr. Bickoff to convert the loan [to a regular home loan], Mr. Bickoff would have to have substantial monies on deposit and available." (Kapaun Decl. [Docket No. 6-3], Exh. J.) This letter confirms that permanent financing was not automatic, but was subject to the terms of the Commitment Letter. The allegation that Defendant represented that Plaintiff would automatically qualify for permanent financing is also contradicted by the Commitment Letter and Mr. Mark Ostrom of Wells Fargo. (*Id.*, Exh. E; Ostrom Decl. ¶¶ 3, 5-7.)

Second, Plaintiff submits three email exchanges between Plaintiff and representatives of Wells Fargo that purportedly establish that Defendant promised to provide Plaintiff with permanent

---

[2] The parties dispute whether these verbal representations are admissible. The Court will not decide such evidentiary issues at this stage of the proceedings. Whether the verbal representations are admissible is irrelevant, because courts may consider otherwise inadmissible evidence for Rule 65 purposes. *See, e.g., Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) ("At the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceeding." (internal quotation marks ommitted)); *Sierra Club v. F.D.I.C.*, 992 F.2d 545, 551 (5th Cir. 1993) ("[A]t the preliminary injunction stage, the procedures in the district court are less formal, and the district court may rely on otherwise inadmissible evidence, including hearsay evidence.").

financing. The first exchange, dated May 2007, involved Plaintiff, Mr. Mark Ostrom, and Mr. Ostrom's assistant. In this exchange, Mr. Ostrom's assistant told Plaintiff that there were two sets of loan disclosures for the construction loan—"one for the construction phase and one when the loan rolls to permanent financing." (TRO Appl., Exh. 2 [Docket No. 3-5].) In addition, Mr. Ostrom stated that he would meet with Plaintiff in order to discuss the two sets of loan disclosures. (*Id.*) This email exchange merely confirms that there were two sets of loan disclosures. It does not show that the permanent loan is not subject to the conditions in the Commitment Letter.

The second exchange, dated June 2008, took place between Plaintiff and Ms. Jeanne Otten.[3] In this exchange, titled "Tile Deposit Exception Request," Plaintiff informed Ms. Otten:

> I have just now spoke to Mark Ostrom. He went thru [sic] the draw process and clarified the process with me. He explained to me that I should relax, that I am approved for permanent financing and that on the line items that are not completely custom I should advance the monies and will be reimbursed as the work is completed.
>
> I will be also able to make progress draws for the remaining line items, which after inspection verifying the work done monies will be released.
>
> I am comfortable with what Mark told me and in the future if I have any further questions I will go thru [sic] him.

(*Id.*, Exh. 3 [Docket No. 3-6].) Ms. Otten replied, "Wonderful!" (*Id.*) Ms. Otten, however, was responsible only for the construction loan draws, and responded with the word "wonderful" in order to express relief that the draw issues had been resolved. (Otten Decl. [Docket No. 14-2] ¶¶ 2-4.) Ms. Otten was not involved in a discussion regarding permanent financing with Plaintiff. (*Id.* ¶ 4.)

The third exchange, dated April 2010, took place between Plaintiff and Mr. Anthony Gangelhoff. In this exchange, Plaintiff requested documentation for the permanent loan, and Mr. Gangelhoff referred him to the Commitment Letter. (TRO Appl., Exh. 4 [Docket No. 3-7].) In the same exchange, Plaintiff stated that Defendant had promised him permanent financing, and asked several additional questions in regards to permanent financing. (*Id.*) Mr. Gangelhoff, however, refused to answer his questions in order to avoid engaging in argument with Plaintiff. (*Id.*; Gangelhoff Decl. [Docket No. 14-3] ¶ 4.) He did not confirm that Plaintiff was guaranteed permanent financing.

In the Declaration of Bruce Bickoff in Further Support of Application for Preliminary

---

[3] Mr. Ostrom was copied on this email exchange, but did not participate in it.

Injunction, Plaintiff argues for the first time that the terms and conditions of the Commitment Letter relate to the closing of the construction loan, not the permanent loan. The Commitment Letter, however, sets forth the terms and conditions of permanent financing for 30 years, and does not reference the short-term construction loan, except to require that it be paid off. (Kapaun Decl. [Docket No. 6-3], Exh. E, at 6.) In addition, the Commitment Letter required that (1) an appraiser certify that the house was built according to approved plans and specifications, and that the house was complete; (2) Plaintiff repay the construction loan as a condition of receiving permanent financing; and (3) an appraisal have a value of at least $5,000,000. (*Id.* at 4-6.) These conditions could only relate to permanent financing after the property was constructed.

Overall, Plaintiff has not demonstrated a likelihood of success on the merits. As Plaintiff has not established a likelihood of success on the merits, the other factors for issuance of a preliminary injunction need not be addressed.

## CONCLUSION

In light of the above, the Court **DENIES** Plaintiff's Application for a Preliminary Injunction. The temporary restraining order, entered on November 2, 2011, is **DISSOLVED**. The hearing scheduled for December 19, 2011, at 10:30 a.m., is **VACATED**.

**IT IS SO ORDERED.**

DATED: December ___, 2011

HON. ROGER T. BENITEZ
United States District Court Judge