FILED

2012 AUG 20  AM 11: 45

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY ru̶  DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| BRUCE F. BICKOFF, | CASE NO. 11-CV-02452 BEN (WVG) |
|---|---|
| Plaintiff, | **ORDER:** |
| vs. | **(1) GRANTING DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** |
| WELLS FARGO BANK, N.A. and DOES 1 through 20, Inclusive, | **(2) DENYING AS MOOT DEFENDANT'S MOTION TO STRIKE PORTIONS OF THE FIRST AMENDED COMPLAINT** |
| Defendants. | [Docket Nos. 22, 23] |

Currently before the Court are Defendant Wells Fargo Bank's Motion to Dismiss the First Amended Complaint (Docket No. 22) and Motion to Strike Portions of the First Amended Complaint (Docket No. 23). For the reasons stated below, the Motion to Dismiss is **GRANTED** and the Motion to Strike is **DENIED AS MOOT**.

## BACKGROUND

In May 2006, Plaintiff purchased real property located at 18011 Avenida Alondra, Rancho Santa Fe, California 92607 (the "Property") for approximately $2,500,000 in order to develop a custom residence. (First Am. Compl. ¶ 7.)[1] In early 2007, Plaintiff contacted one of Defendant's local

---

[1] All of the facts laid out in this Order are drawn from the allegations in the First Amended Complaint.

branches to obtain a $3,000,000 construction loan for the construction of his home. (*Id.* ¶¶ 9-10.) Head loan officer Mark Ostrom allegedly told Plaintiff that following the expiration of the construction loan, the construction loan would automatically roll into a permanent financing loan. (*Id.* ¶ 10.)

Defendant subsequently approved Plaintiff for the construction loan and issued him a loan commitment letter stating that permanent financing would be provided upon the construction loan's expiration. (*Id.* ¶ 11.) For Plaintiff to secure permanent financing, the commitment letter required that: (1) Plaintiff have at least $2,232,448 in liquid funds; (2) there be no material adverse changes in Plaintiff's income, assets, or credit, prior to the issuance of closing documents; (3) an appraiser certify that the house was built according to approved plans and specifications, and that it was complete; (4) the property be free of any mechanic's liens and subject to a final inspection; (5) Plaintiff obtain a certificate of occupancy; and (6) Plaintiff secure adequate homeowner's insurance on the property. (*Id.* ¶¶ 46-51.) Plaintiff alleges that of the six requirements necessary to guarantee permanent financing, the first two were excused, waived, or modified by Defendant, while the last four were met by Plaintiff. (*Id.* ¶ 51.) Defendant also allegedly gave Plaintiff oral assurances that he would automatically qualify for permanent financing and that the construction loan would automatically roll over into permanent financing. (*Id.* ¶ 13.) Plaintiff began construction on his home, and Defendant disbursed funds to him accordingly as various construction goals were met. (*Id.* ¶ 14.)

Upon expiration of the construction loan in February 2010, Plaintiff contacted Defendant about the roll-over to permanent financing. (*Id.* ¶ 22.) Defendant replied that Plaintiff would have to re-apply for permanent financing because the particular product offered to Plaintiff at the time of his original loan was no longer available. (*Id.* ¶ 23.) On March 10, 2010, Defendant's loan officer Anthony Ganglehoff emailed Plaintiff stating that permanent financing would not be available to Plaintiff. (*Id.* ¶ 28.) The following month, Mr. Ganglehoff informed Plaintiff that a notice of default on the construction loan was mailed to Plaintiff on April 8, 2010, and that if relevant payments were not made, Defendant would foreclose on the Property. (*Id.* ¶ 29.)

On September 22, 2010, Defendant filed a notification of default with the County of San Diego,

which it then rescinded in order to comply with California Civil Code Section 2923.5.[2] (*Id.* ¶¶ 37-38.) Defendant then contacted Plaintiff and asked him to re-apply for permanent financing. (*Id.* ¶ 39.) Plaintiff refused, and stated that he had already been guaranteed permanent financing. (*Id.*) Defendant then filed a second notification of default on April 1, 2011. (*Id.* ¶ 40.) On September 29, 2011, Defendant issued a notice of trustee's sale stating that the Property would be auctioned off on October 27, 2011. (*Id.* ¶ 42.) On January 3, 2012, the Property was sold at a trustee's sale for approximately $3,300,000. (*Id.* ¶ 52.)

Plaintiff originally filed suit in San Diego County Superior Court on October 20, 2011. On October 21, 2011, Defendant removed the action. On January 6, 2012, Plaintiff filed his First Amended Complaint, asserting seventeen causes of action: (1) breach of written contract; (2) breach of oral contract; (3) breach of implied covenant of good faith and fair dealing; (4) breach of loan commitment; (5) deceit; (6) fraud under California Civil Code Section 1710; (7) constructive fraud; (8) fraud in the inducement; (9) promissory fraud; (10) negligent misrepresentation; (11) concealment; (12) conversion; (13) intentional infliction of emotional distress; (14) negligent infliction of emotional distress; (15) violation of California Business and Professions Code Section 17200 *et seq.*; (16) violation of California Business and Professions Code Section 17500 *et seq.*; and (17) violation of Consumer Legal Remedies Act, Civil Code Section 1750 *et seq.*

Presently before the Court are Defendant's Motion to Dismiss the First Amended Complaint and Motion to Strike Portions of the First Amended Complaint. Being fully briefed, the Court finds the Motions suitable for determination on the papers without oral argument, pursuant to Civil Local Rule 7.1.d.1.

## DISCUSSION

### I. MOTION TO DISMISS

Defendant moves to dismiss the First Amended Complaint for failure to join an indispensable party. Federal Rule of Civil Procedure 12(b)(7) provides for dismissal of an action for failure to join a party required under Rule 19. Rule 19 outlines a three-step process for determining whether a court

---

[2] California Civil Code Section 2923.5 requires mortgagees, trustees, beneficiaries, and authorized agents to meet certain due diligence requirements with regard to borrowers prior to filing a notice of default.

should dismiss an action for failure to join an indispensable party. *United States v. Bowen*, 172 F.3d 682, 688 (9th Cir. 1999). First, a court determines whether an absent party is necessary:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> . . .
>> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a)(1); *see also Bowen*, 172 F.3d at 688. Second, "[i]f the absent party is 'necessary,' the court must determine whether joinder is 'feasible.'" *Bowen*, 172 F.3d at 688 (citing FED. R. CIV. P. 19(a) & (b)). Third, if joinder is not feasible, the court must determine whether the absent party is indispensable such that without joinder the action cannot proceed in "equity and good conscience." *Id.* (quoting FED. R. CIV. P. 19(b)).

"When asserting a claim for relief, a party must state: (1) the name, if known, of any person who is required to be joined if feasible but is not joined; and (2) the reasons for not joining that person." FED. R. CIV. P. 19(c). Rule 19 is designed not only to protect the parties, but to further the public's interest "in avoiding repeated lawsuits on the same essential subject matter." *CP Nat'l Corp. v. Bonneville Power Admin.*, 928 F.2d 905, 912 (9th Cir. 1991) (citing FED. R. CIV. P. 19 advisory committee's note).

The First Amended Complaint must be dismissed for failure to join a required party. Plaintiff quitclaimed a 40% interest in the Property to his former wife, Jamie Steward Bickoff, on April 2, 2009. (Def. RJN [Docket No. 22-2], Exh. E.)[3] The present action relates to damages allegedly suffered as a result of foreclosure of the Property, which Jamie Bickoff would also be entitled to recover. Specifically, Plaintiff seeks: (1) loss of equity in the Property as a result of the trustee's sale (First Am. Compl. ¶¶ 60, 68, 83); (2) damages as a result of Defendant "wrongfully instituting a Trustee's Sale" (*id.* ¶ 153); and (3) damages because the Property was "fraudulently sold at a Trustee's sale" (*id.*

---

[3] Defendant's request for judicial notice is granted. *See* FED. R. EVID. 201(b)(2).

¶ 173). If the Court were to award damages for the alleged wrongful foreclosure, Jamie Bickoff would be entitled to 40% of the damages as a 40% owner of the Property. Jamie Bickoff is thus a necessary party in that she claims an interest related to the subject of this action, and her absence could leave Defendant at the risk of multiple obligations related to the Property. *See Ramsey v. Bomin Testing, Inc.*, 68 F.R.D. 335, 338 (W.D. Okla. 1975) (co-owners are indispensable parties). Plaintiff neither named Jamie Bickoff as a required party nor demonstrated why joinder would not be feasible, as required by Rule 19(c).

First, Plaintiff argues that "the loan commitment and construction loan was between Wells Fargo and Bickoff as a single and unmarried man," and "Bickoff merely quitclaimed an interest to [Jamie] Steward [Bickoff] during the construction of the Property." (Opp. at 2.) Regardless of whether Jamie Bickoff signed the loan commitment or construction loan, Plaintiff deeded a 40% interest in the Property to Jamie Bickoff, giving her an undisputed direct ownership of 40% of the Property.

Second, Plaintiff argues that "[w]hatever interest [Jamie] Steward [Bickoff] might have in the Property at issue is protected via California's Family Code," and "[s]hould Plaintiff Bickoff be victorious and be awarded a judgment, [Jamie] Steward [Bickoff] has every right to assert her interests in a California Superior Family Court." (*Id.* at 3.) On the contrary, Jamie Bickoff's interest in the Property is not a community property interest, but a direct ownership interest. Whether Jamie Bickoff has any rights in family law court against Plaintiff for recovery of the claims asserted in this action is speculative. In addition, Jamie Bickoff may not pursue claims against Defendant in family law court.

## II. MOTION TO STRIKE

Because the Motion to Dismiss the First Amended Complaint is granted, Defendant's Motion to Strike Portions of the First Amended Complaint is **DENIED AS MOOT**.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss the First Amended Complaint is **GRANTED**. The First Amended Complaint is **DISMISSED WITHOUT PREJUDICE**. Plaintiff is granted leave to file a second amended complaint within thirty (30) days of the date this Order is filed.

1  Defendant's Motion to Strike Portions of the First Amended Complaint is **DENIED AS
2  MOOT**.
3  Plaintiff is cautioned that future filings must comply with Civil Local Rule 5.1.a ("Printed text,
4  produced on a word processor or other computer, may be proportionally spaced, provided the type is
5  *no smaller than twelve-point standard font*." (emphasis added)).  Any future filings that do no comply
6  with the Local Rules will be stricken from the docket.
7  **IT IS SO ORDERED.**
8  DATED: August __, 2012
9  HON. ROGER T. BENITEZ
   United States District Judge